**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2016-0409, <u>Deborah Cutler v. Daniel Knight & a.</u>, the court on May 11, 2017, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). We affirm.

The defendants, Daniel Knight and Samantha Knight (tenants), appeal the order of the Circuit Court (<u>LeFrancois</u>, J.) entering a judgment for the plaintiff, Deborah Cutler (landlord), in an eviction action. <u>See</u> RSA 540:12 (2007). The tenants argue that: (1) the landlord failed to comply with certain provisions of the lead paint statute, RSA chapter 130-A (2015 & Supp. 2016); (2) the eviction was retaliatory; (3) the eviction notice failed to provide the specificity required by statute; and (4) the evidence was insufficient to prove that they engaged in the conduct alleged in the eviction notice.

The tenants first argue that RSA chapter 130-A "provides the framework by which lead paint issues involving leased or rented dwelling units occupied by a child" must be resolved, and that the landlord failed to comply with RSA 130-A:8-a, II, which sets forth eight conditions that a landlord must meet when evicting a tenant after receiving an order for lead hazard reduction, including an offer of a suitable replacement dwelling. <u>See</u> RSA 130-A:8-a, II (2015). The tenants also argue that RSA 130-A:8-a, II(h) requires a landlord to comply with RSA 540:2, II(f), which allows a landlord to evict a tenant for a lead exposure hazard only if the landlord abates the problem by a method other than interim controls or encapsulation, or any other method which may take more than 30 days to perform, or when the landlord removes the dwelling unit from the residential rental market. <u>See</u> RSA 540:2, II(f) (2007). The tenants further argue that to allow the landlord to evict them for causing substantial damage to the premises, <u>see</u> RSA 540:2, II(b) (2007), for having created a lead paint hazard, would render RSA 130-A:8-a meaningless.

It is a long-standing rule that parties may not have judicial review of matters not raised in the trial court. <u>Bean v. Red Oak Prop. Mgmt.</u>, 151 N.H. 248, 250 (2004). The purpose of this preservation requirement is to afford the trial court an opportunity to correct an error it may have made. <u>In the Matter of Mannion & Mannion</u>, 155 N.H. 52, 54 (2007). It is the appellants' burden to demonstrate that they raised their issues in the trial court. <u>See</u> <u>Bean</u>, 151 N.H. at 250. The tenants have failed to show that they raised these issues in the trial court. Accordingly, they are not preserved for review. <u>See</u> <u>id</u>.

The tenants next argue that both RSA 130-A:6-a, II (Supp. 2016) and RSA 540:13-b (2007) create a rebuttable presumption that an eviction instituted within six months of receiving notice of a child tenant's elevated blood lead level is based upon the elevated blood lead level, and that the landlord here failed to rebut that presumption. At trial, the tenants argued that the presumption applied because the landlord served the eviction notice within a week after receiving the abatement order, not the notice of the child's elevated blood lead level. The trial court found that the landlord rebutted the presumption by proving that the tenants created the lead exposure hazard by renovating the premises improperly, and that the landlord instituted the action in order to remediate the problem without further exposing the tenants and their children to lead paint hazards. We will affirm the trial court's factual findings unless they are unsupported by the evidence. Sutton v. Town of Gilford, 160 N.H. 43, 55 (2010). Tenant Daniel Knight testified that he made substantial renovations to the property, even after discovering a lead paint problem, and that neither he nor anyone he hired was trained or certified to work with lead paint. The landlord, who is Daniel Knight's mother, testified that remediation could cost up to $50,000, and that she instituted this action "for the safety of [her] grandchildren," who were living in the home. She testified that she needs to "get the work done," and that the children cannot safely live in the house during remediation. We conclude that the record supports the court's finding that the landlord rebutted the presumption of retaliation. See id.

The tenants next argue that the eviction notice was insufficient as a matter of law because it failed to provide the specificity required by RSA 540:3, III, which states that "[t]he eviction notice shall state with specificity the reasons for the eviction." See RSA 540:3, III (2007). The landlord's eviction notice stated the following reasons for the eviction:

> 1. You or members of your household have caused substantial damages to the . . . dwelling unit . . . by making repairs to the premises which have caused lead paint to be dispersed within the dwelling unit and thus have put your minor children at risk of lead paint poisoning.

> 2. You, members of your household and your agents who made the aforementioned repairs to the dwelling unit . . . are not certified to do lead paint substance abatement and thus you are in violation of NH RSA 130-A.

The tenants do not explain why, in their view, the reasons stated in the eviction notice are insufficiently specific; nor do they allege that they were prejudiced in preparing for the hearing by any alleged lack of specificity. Judicial review is not warranted for complaints without developed legal argument. State v. Blackmer, 149 N.H. 47 (2003). Based upon this record,

and the lack of developed argument, we conclude that the eviction notice was sufficient as a matter of law.

Finally, the tenants argue that the evidence was insufficient to prove that they engaged in the conduct alleged in the eviction notice. To prevail in an eviction action, a landlord must prove by a preponderance of the evidence that the tenants engaged in the conduct alleged in the notice as grounds for the eviction. Nashua Hous. Auth. v. Wilson, 162 N.H. 358, 362 (2011). We review sufficiency of the evidence claims as a matter of law and uphold the trial court's findings and rulings unless they are unsupported by the evidence or legally erroneous. Id. at 360. We review the evidence in the light most favorable to the prevailing party, in this case, the landlord. Id.

The trial court found that, as the landlord alleged in the eviction notice, "the tenants were doing repair work in the premises while living there with their 7 children, knowing that there was lead paint in the premises, . . . repair work that resulted in sanding and flaking of paint . . . and . . . in their infant daughter having unsafe levels of lead in her blood." The court also found that, as the landlord alleged in the eviction notice, the tenants did the work "without proper lead paint training or certification."

The lead exposure expert from the New Hampshire Department of Health and Human Services testified that, in his opinion, it would not be hazardous to live in the premises with children if the tenants "ke[pt] the house clean" and "ke[pt] up with any of the lead hazards . . . creating the dust." However, the evidence showed that the tenants were continuously renovating the property, creating new lead exposure hazards. The tenants testified that, during approximately one year of occupancy, they removed windows, put up walls, took down walls, removed ceilings, painted, insulated, and installed a closet. Samantha Knight testified that paint was flaking, and that her husband "did some sanding" in addition to painting. The landlord testified that the bank inspected the property five times before approving her loan application because, at each inspection, the renovations were incomplete. The appraisal report admitted into evidence showed that, in August 2015, the upper level hallway had an unfinished ceiling, with dangling wires and fixtures, and that the main level hallway needed drywall repair. Daniel Knight admitted that he continued to work on the house after June 2015, when he learned about the presence of lead paint, that he did not participate in lead paint training, and that he is not certified to work with lead paint.

The landlord testified, and the trial court found, that the tenants decided what renovations were necessary. She testified that, although she agreed to have Daniel Knight install new windows, "[h]e kept on going, and going, and going . . . There was way too much done." She also testified that she was unaware of a potential lead paint hazard until February 2016, when she was contacted by the State for an inspection.

Based upon this record, we conclude that the trial court's findings are neither unsupported by the evidence nor legally erroneous, see Nashua Hous. Auth., 162 N.H. at 360, and that the evidence was sufficient to prove that the tenants engaged in the conduct alleged in the eviction notice, see id. at 362.

Affirmed.


Dalianis, C.J., and Hicks, Lynn, and Bassett, JJ., concurred.


**Eileen Fox,**
**Clerk**